**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X   Case No.:

SCHEREZADE MOMIN,

                      Plaintiff,                         **COMPLAINT**

            - against -                    **PLAINTIFF DEMANDS A**
                                              **TRIAL BY JURY**

QUANTIERRA ADVISORS LLC. dba
SCIPRE ANALYTICS,
BENJAMIN CARLOS THYPIN, *Individually* and
SANDIP TRIVEDI, *Individually*,

                     Defendants.
------------------------------------------------------------------------X

       Plaintiff, SCHEREZADE MOMIN, by and through her attorneys, the LAW OFFICE OF

YURIY MOSHES, P.C., hereby complains of Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1.      Plaintiff brings this action against Defendants pursuant to the Fair Labor Standards Act, 29

        U.S.C. § 201, *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19

        ("NYLL") for **failure and refusal to pay Plaintiff's earned wages** for work performed.

        As a result of Defendants' violation of the NYLL and FLSA, Plaintiff is entitled to (a) the

        full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment interest, and

        (d) an additional amount as liquidated damages equal to one hundred percent of the total

        amount of the wages found to be due.

2.      Plaintiff also complains pursuant to the New York City Human Rights Law, New York

        City Administrative Code §8-502(a) *et. seq*. ("NYCHRL") and seeks damages to redress

        the injuries Plaintiff has suffered as a result of being **discriminated** **against** by her

        employer due to her gender **(sexual harassment)** and **Retaliated Against** for complaining

        of this sexual harassment and discrimination.

3.     Plaintiff also complains pursuant to the New York City Human Rights Law, New York City Administrative Code §8-502(a) *et. seq.* ("NYCHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being, **Denied a Reasonable Accommodation**, **discriminated against** by her employer due to her **Disability (PTSD, Mixed Anxiety Disorder, and Major Depressive Disorder)** and **in Retaliation** for requesting a reasonable accommodation.

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court is proper under §216(b) of the FLSA (29 U.S.C. § 216 (b)) and 28 U.S.C. §§ 1331 and 1343.

5.     The Court has supplemental jurisdiction over the claims of Plaintiff brought under the New York City Human Rights law pursuant to 28 U.S.C. §1367.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims have occurred.

## PARTIES

7.     That at all times relevant hereto, Plaintiff SCHEREZADE MOMIN ("MOMIN") was a resident of the State of New York and the County of New York.

8.     That at all times relevant hereto, Defendant QUANTIERRA ADVISORS LLC., dba SciPre Analytics ("SCIPRE") was a foreign limited liability company, duly existing pursuant to, and by virtue of the laws of the State of Delaware, with its principal place of business located at 47 Monroe Street, 2nd Floor, New York, NY 10002.

9.     Upon information and belief, Defendant SCIPRE had and has gross volume of sales of more than $15,000,000.00.

10.    That at all times relevant hereto, Defendant SANDIP TRIVEDI ("TRIVEDI") was an

employee of Defendant SCIPRE, holding the position of "CEO."

11. That at all times relevant hereto, Defendant TRIVEDI was Plaintiff MOMIN's supervisor and/or had supervisory authority over Plaintiff MOMIN.

12. That at all times relevant hereto, Defendant BENJAMIN CARLOS THYPIN ("THYPIN") was an employee of Defendant SCIPRE, holding the position of "Business Development Manager."

13. That at all times relevant hereto, Defendant THYPIN was Plaintiff MOMIN's supervisor and/or had supervisory authority over Plaintiff MOMIN.

14. That at all times relevant hereto, Defendant SCIPRE, Defendant TRIVEDI, and Defendant THYPIN, are collectively referred to herein as "Defendants."

15. That at all times relevant hereto, Defendant SCIPRE  had the power to, and did in fact, establish the terms of Plaintiff MOMIN's employment.

16. That at all times relevant hereto, Defendant SCIPRE had the power to, and was responsible for determining the wages to be paid to Plaintiff MOMIN.

## MATERIAL FACTS

17. On or around January 1, 2016, Plaintiff MOMIN began working for Defendants as a "Front End Engineer" earning approximately $38.46/hour or $80,000/year.

18. Her job consisted of: 1) developing and maintaining the company website; 2) keeping the company servers operating correctly; and 3) handling the technological needs of the company.

19. Upon information and belief, during the course of her employment with Defendants Plaintiff MOMIN's work performance was satisfactory.

20.  In or around mid-December 2016, Plaintiff MOMIN and Defendant TRIVEDI attended a company event. During this event, Defendant TRIVEDI became inebriated and told Plaintiff MOMIN that he was "in love with" her. Sensing that Defendant TRIVEDI was inebriated and not sharing similar feelings, Plaintiff MOMIN changed the subject and did not bring it up to Defendant TRIVEDI again.

21.  On or around December 26, 2016, Plaintiff MOMIN verbally complained about the sexual harassment to Defendant THYPIN and informed him about this incident.

22.  Defendant THYPIN told Plaintiff MOMIN that Defendant TRIVEDI should not have spoken to her in the way that Defendant TRIVEDI did.

23.  At this time, Defendant THYPIN also verbally informed Plaintiff MOMIN that Defendant TRIVEDI was obsessed with her and that Plaintiff MOMIN should "maintain some distance" from Defendant TRIVEDI.

24.  On or around September 25, 2017, in retaliation for her complaint of sexual harassment, Defendants reduced Plaintiff MOMIN's yearly salary to from $80,000.00 to $65,000.00.

25.  Plaintiff MOMIN never agreed to this decrease in salary and instead questioned the sudden change. Plaintiff MOMIN's decease in salary constituted an adverse employment action as Defendants decreased her salary in response to her sexual harassment complaint.

26.   Plaintiff MOMIN continued to receive the reduced salary until on or about June 3, 2018 when Defendants began to pay her at the agreed upon rate.

27.  From on or about September 27, 2017 to on or about June 3, 2018, a period of approximately thirty-six (36) weeks, Plaintiff MOMIN was underpaid and is owed **$10,382.40.**

28.  Accordingly, Defendants owe Plaintiff MOMIN a total of ($55,382.40 - $45,000.00)

**$10,382.40** for their underpayment between September 27, 2017 and June 3, 2018.

29.    In or around March 2018, Plaintiff MOMIN and Defendants travelled to San Francisco to attend a work program, which lasted approximately three weeks.

30.    While staying at an AIRBNB rented by Defendant SCIPRE for Plaintiff MOMIN and Defendants, Defendant TRIVEDI sexually harassed Plaintiff MOMIN by attempting to engage in sexual interactions and attempting to kiss her.

31.    Defendant TRIVEDI's continued his sexually harassing conduct and created a hostile work environment for Plaintiff MOMIN.

32.    On or around December 2018 through January 3, 2019, Defendants placed Plaintiff MOMIN on a paid suspension while they investigated her allegations of sexual harassment.

33.    Plaintiff MOMIN's suspension constituted an adverse employment action as Defendants suspended her employment solely in retaliation of her sexual harassment complaint.

34.    During this period, Plaintiff MOMIN continued to work from home.

35.    On or about January 25, 2019, Defendant THYPIN sent Plaintiff MOMIN an email stating that the investigation for her sexual harassment complaint against Defendant TRIVEDI was concluded, that she could resume her regular work schedule on January 28, 2019, and that she would "be paid for the time period that the investigation was ongoing."

36.    Defendant SCIPRE maintained a corporate culture for shareholders to regularly work from home. As such, upon receiving the email, Plaintiff continued to work from home.

37.    On or about January 31, 2019, Defendant THYPIN sent Plaintiff MOMIN an email stating that Plaintiff MOMIN was absent from work on "January 28, 29, and 30, 2019." Defendant THYPIN also stated that Plaintiff MOMIN was expected to return to work "in the office" on January 31, 2019.

38.   However, Plaintiff MOMIN was confused by this email because she did in fact work from home on those dates, as she had been doing during the investigation of her sexual harassment complaint. In addition, Defendants were aware that Plaintiff was working from home because she would document her tasks on "Slack" (a software program regularly used by the shareholders working at SCIPRE to track work progress).

39.   All other shareholders were able to work from home.

40.   On or about February 1, 2019, Plaintiff MOMIN spoke with Defendant THYPIN regarding his January 31, 2019 email and again, requested a reasonable accommodation to continue working from home. He stated that he would send Plaintiff MOMIN a reasonable accommodation form, but rejected her reasonable accommodation request and instead told that Plaintiff MOMIN must come into the office to work.

41.   All four shareholders worked from home, but Plaintiff MOMIN was the only shareholder mandated to work in the office.

42.   After her conversation with Defendant THYPIN, Plaintiff MOMIN continued to work from home and Defendants were aware that Plaintiff was working from home because she would document her tasks and communicate with the other shareholders on "Slack."

43.   Beginning in February 2019, Plaintiff MOMIN stopped receiving any salary from Defendants.

44.   On or about February 15, 2019, Plaintiff MOMIN noticed that she did not get paid for that pay period. On that same day, Plaintiff MOMIN sent a text message to Defendant THYPIN stating that she noticed she was not getting paid. Defendant THYPIN did not reply.

45.   On or about February 19, 2019 Defendant THYPIN sent Plaintiff MOMIN a letter acknowledging receipt of the letter and providing her with a "Cooperative Dialogue

Questionnaire" that was meant to serve as Defendant SCIPRE's reasonable accommodation form.

46.     On or about March 1, 2019, Plaintiff MOMIN noticed that Defendants again failed to pay her for work performed and decided to check Defendants' human resources software ("GUSTO") to see why she had not been paid as Defendants would no longer communicate with her. Plaintiff MOMIN then found out that Defendants placed her on an unpaid medical leave without notifying her.

47.     Once Plaintiff MOMIN learned that she was placed on unpaid medical leave and that she was not getting paid she stopped working.

48.     Defendants decision to place Plaintiff MOMIN on unpaid medical leave constituted an adverse employment action as Plaintiff MOMIN

49.     It is clear from the temporal proximity from the date of the completion of the investigation on x date and x date, when Defendants only decided to remove Plaintiff MOMIN from the payroll due to her

50.     From on or about January 28, 2019 to March 1, 2019, Defendants failed to compensate Plaintiff MOMIN, which is a period of approximately five (5) weeks.

51.     Plaintiff MOMIN was entitled to be compensated a total of **$7,962.00,** ($1538.40/week x 5 weeks).

52.     Accordingly, Defendants owe Plaintiff MOMIN a total of **$7,962.00** for their failure to pay her wages between January 28, 2019 to March 1, 2019

53.     On or about April 7, 2020, Plaintiff MOMIN returned the completed reasonable accommodation form to Defendant THYPIN.

54.     On or about May 22, 2020, Defendant THYPIN sent Plaintiff MOMIN a letter stating that

Defendants would be unable to offer her an immediate return to work and that she would have to remain on an unpaid leave of absence with no foreseeable return date.

55.   Defendants made the decision to not allow Plaintiff MOMIN to return to work without entering into the interactive process. Defendants failed to communicate with Plaintiff MOMIN regarding her request for a reasonable accommodation and merely informed her that they would be unable to accommodate her request.

56.   Defendants made the unilateral decision to place Plaintiff MOMIN on an indefinite unpaid leave without any medical evidence.

57.   But for the fact that Plaintiff MOMIN has a disability and requested a reasonable accommodation, Defendants would not have placed her on indefinite leave.

58.   Defendants' actions and conduct were and are intentional and intended to harm Plaintiff MOMIN.

59.   But for the fact that Plaintiff MOMIN has been objecting to, and complaining about Defendant TRIVEDI's sexual harassment, Defendants would not have retaliated against Plaintiff MOMIN by reducing her salary.

60.   As a result of Defendants' blatant violation of the FLSA and NYLL, Plaintiff is owed a total of **$18,344.40** in **unpaid wages** for work performed for Defendants.

61.   Plaintiff MOMIN has been damaged by Defendants' failure to pay her lawfully earned wages.

62.   Defendants failure to pay Plaintiff MOMIN her proper earned wages required by law was willful.

63.   But for the fact that Plaintiff MOMIN has been objecting to, and complaining about Defendant TRIVEDI's sexual harassment, Defendants would not have retaliated against

Plaintiff MOMIN by put her on a paid suspension.

64.     Plaintiff MOMIN has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

65.     As a result of Defendants' actions, Plaintiff MOMIN feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

66.     As a result of the acts and conduct complained of herein, Plaintiff MOMIN has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff MOMIN has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

67.     Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff MOMIN demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## MINUMUM WAGE

68.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

69.     Defendants willfully employed Plaintiff MOMIN in the aforementioned enterprise and failed to compensate Plaintiff at the required minimum hourly rate for her employment.

70.     Defendants' failure to pay Plaintiff the mandated minimum hourly pay in accordance with the FLSA was a direct violation of the FLSA, specifically 29 U.S.C. § 206.

71.     Defendants' failure to pay proper minimum wages for each hour worked was willful within the meaning of 29 U.S.C. § 255.

72.   Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF THE NEW YORK LABOR LAW
## FAILURE TO PAY EARNED WAGES

73.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

74.   Defendants, in withholding Plaintiff's wages without cause or bona fide dispute as to Plaintiff's rights and Defendants' obligations to pay, have violated the NYLL, including § 193.

75.   As a consequence, under NYLL § 198, Plaintiff is entitled to (a) the full amount of underpayment, (b) attorney's fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

76.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77.   The New York City Administrative Code §8-107 (1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender (sexual harassment)**, **disability (PTSD, Mixed Anxiety Disorder, and Major Depressive Disorder)**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of

employment."

78.     Defendants violated the section cited herein as set forth by discriminating against Plaintiff

because of her disability.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

80.     The New York City Administrative Code §8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing

of any of the acts forbidden under this chapter, or attempt to do so."

81.     Individual Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and

coercing the above discriminatory conduct.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

83.     New York City Administrative Code §8-107(13) Employer liability for discriminatory

conduct by employee, agent or independent contractor.

   a.   An employer shall be liable for an unlawful discriminatory practice based upon the

        conduct of an employee or agent which is in violation of any provision of this

        section other than subdivisions one and two of this section.

   b.   An employer shall be liable for an unlawful discriminatory practice based upon the

        conduct of an employee or agent which is in violation of subdivision one or two of

this section only where:

1.  the employee or agent exercised managerial or supervisory responsibility; or

2.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.  An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

84.  Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86.  The New York City Administrative Code §8-107(7) provides that, "it shall be an unlawful

discriminatory practice for any person engaged in any activity to which this chapter applies
to retaliate or discriminate in any manner against a person because such person has . . .
opposed any practice forbidden under this chapter . . ."

87.    Defendants engaged in an unlawful discriminatory practice in violation of New York
Administrative Code §8-107(7) by retaliating against Plaintiff.

## JURY DEMAND

88.    Plaintiff MOMIN requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by the FLSA
and NYLL by failing to pay Plaintiff her earned wages;

B.  Declaring that Defendants engaged in unlawful employment practices prohibited by the
NYCHRL, by discriminating against Plaintiff on the basis of her gender and disability.

C.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants'
unlawful discrimination and to otherwise make her whole for any losses suffered as a result of
such unlawful employment practices;

D.  Awarding damages to Plaintiff for all unpaid wages due under the NYLL;

E.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress,
pain and suffering and injury to her reputation in an amount to be proven;

F.  Awarding Plaintiff liquidated damages as a result of Defendants' willful failure to pay wages;

G.  Awarding Plaintiff punitive damages;

H.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the
prosecution of the action; and

I.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated:  Brooklyn, New York
       January 21, 2021

Respectfully submitted,

/s/ Jessenia Maldonado
Jessenia Maldonado, Esq.
Law Office of Yuriy Moshes, P.C.
517 Brighton Beach Ave, 2nd Floor
Brooklyn, New York 11235
jmaldonado@mosheslaw.com
Tel: (718) 504-6090
*Attorneys for Plaintiff*